UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEURVIS LYNELL MOORE,

        Petitioner,

                                                  Case No. 06-14833
v.                                           Honorable David M. Lawson

THOMAS BELL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Michigan prisoner Jeurvis Lynell Moore, currently incarcerated at Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Moore pleaded guilty to armed robbery in the Wayne County, Michigan circuit court and was sentenced to fifteen to thirty years in prison. He alleges that his conviction and sentence are unconstitutional because his guilty plea was coerced by the trial judge, his trial counsel was constitutionally ineffective, the presentence report was inaccurate, the trial court failed to establish a factual basis that supports his conviction, his plea agreement was illusory, and his sentence was based on facts that were not determined beyond a reasonable doubt by a jury or admitted by him. The respondent filed a response to the petition asserting that the claims lack merit. The Court agrees and will deny the petition.

I.

On July 28, 2003, the petitioner appeared with counsel before the trial court for a pretrial hearing on charges of robbery, assault, and being an habitual offender. The state prosecutor offered to dismiss the assault and habitual offender charges in exchange for the petitioner's guilty plea to armed robbery. As the petitioner was considering the plea offer, the trial court held a bench

conference with the petitioner and the attorneys. The colloquy apparently was not recorded, but the petitioner recalls the following statement from the trial judge:

> Mr. Moore, if you were to go to trial there is the possibility that you could win, if that were to happen you would not be facing time, but if you go to trial and lose, I could give you life in prison with the 4th degree enhancement notice, but I would probably not give you life. If you were to take responsibility for your actions, but I would be inclined to sentence you within the middle of your guidelines, which would still be 30 years.

Br. in Support of Pet. at ¶ 3(a).

Thereafter, the petitioner agreed to plead guilty to armed robbery in exchange for the prosecutor's agreement to dismiss the following charges: assault with intent to commit murder, felonious assault, and being a fourth habitual offender. He signed a written plea agreement that contained a list of the rights he was waiving by pleading guilty, and a promise that his sentence would not exceed a minimum of fifteen years in prison and a maximum of thirty years. The plea hearing transcript opens with the following statement from the trial court:

> THE COURT: * * * Now, arm[ed] robbery, technically, Mr. Moore, is life in prison. We had an opportunity to discuss this matter at sidebar.
> I want to put that on the record. Not only did I talk with you personally, but I talked with your attorney, Mr. Cooper and Ms. Korkis the Prosecutor.
> There was originally some discussion about the fact that if you win, it could be zero, but you might have still parole hold issues.
> If you lose, it could be life in prison, especially under habitual four.
> The prosecutor also ha[d] some discussion[s] about the guidelines, whether those were 14 years. Whether those were 18 years.
> It [*sic*] was also a discussion of a 15 to 30 year sentence agreement, is that right, Mr. Moore[?]
> DEFENDANT MOORE: Yes, sir.

Plea Hr'g Tr. at 3-4 (July 28, 2003).

Thereafter, the trial court engaged in a guilty plea colloquy that was unremarkable, except, perhaps, for the statement advising the petitioner of the exact sentence he would receive if he accepted the plea offer and entered a guilty plea. The court stated:

> THE COURT: . . . And, having now had the opportunity to discuss this with Counsel a little bit further in private, you've made a decision in this particular matter that you wish to ple[a]d, is that to a 15 to 30 year sentence agreement, with a dismissal of counts 2 and 3 and a dismissal of the enhancement notice; is that correct?
> DEFENDANT MOORE: Yes, sir.
> THE COURT: And Mr. Cooper has gone through each one of these rights with you? In fact, you checked off those as you were going right down or Mr. Cooper checked them off as he discussed them with you; correct?
> DEFENDANT MOORE: Yes, sir.
> THE COURT: Okay.
> And this is the plea bargain form that he checked that you read, reviewed, and signed after reading your rights; correct?
> DEFENDANT MOORE: Yes, sir.

*Id.* at 4-5. The court then recited the catalog of procedural rights to which the petitioner was entitled, all of which was contained on the preprinted form the petitioner signed. Thereafter, the court made a statement about the intended sentence, and the colloquy continued:

> THE COURT: Mr. Moore, you understand that arm[ed] robbery is a pretentiously a life offense, but by pleading, you'll be sentence[d] to a sentence agreement of 15 to 30 years, you understand that?
> DEFENDANT MOORE: Yes, sir.
> THE COURT: Okay.
> How do you wish to plea to the charge of arm[ed] robbery?
> DEFENDANT MOORE: Guilty, sir.
> THE COURT: You understand that if I accept your plea, you will not have a trial.
> You'll give up the rights you would've had at that trial.
> DEFENDANT MOORE: Yes, sir.
> THE COURT: Is anybody forcing you to plea?
> DEFENDANT MOORE: No, sir.
> THE COURT: Pleading freely and voluntarily?
> DEFENDANT MOORE: Yes, sir.
> THE COURT: You understand, you may be subject to the penalties, I've previously discussed?

> DEFENDANT MOORE: Yes, sir.
> THE COURT: Specifically, the terms of the sentence agreement?
> DEFENDANT MOORE: Yes, sir.
> THE COURT: Okay.
> If the guidelines are higher, I come down based upon the sentence agreement, you are going to get 15 years to 30, do you understand that?
> DEFENDANT MOORE: Yes, sir.

*Id.* at 6-7.

Once the petitioner waived his rights and acknowledged his guilt, the trial court established a factual basis for the charge of armed robbery as follows:

> THE COURT: Okay. All right.
> On April 24, 2003, in front of 1707 Casey, Detroit, County of Wayne.
> You had a knife and you tried to steal a purse and some personal items from a[n] individual at that address or location.
> I don't know if you knew the person's name, but it was a Katherine Bachelor, a female; correct.
> DEFENDANT MOORE: Yes, sir.
> THE COURT: Okay.
> And when you used that knife to take the personal items belonging to Ms. Bachelor, you intended to permanently deprive them or take that – you're [not] going to return them, were you?
> DEFENDANT MOORE: No, sir.
> THE COURT: Okay.
> So, one, you used a knife. You stole a purse and personal item. And used the knife in a threatening manner in order to get those.
> And you didn't intend to return the purse or personal items to Ms. Bachelor; is that correct.
> DEFENDANT MOORE: Yes, sir.
> THE COURT: In fact, I think you might have even stab[b]ed her with that knife, is that right?
> DEFENDANT MOORE: Yes, sir.

*Id.* at 7-8.

On August 11, 2003, the trial court sentenced the petitioner, as promised, to a prison term of fifteen to thirty years. The state sentencing guidelines yielded a range of 171 to 285 months for the minimum sentence. The petitioner was on parole at the time he committed the crimes in this

case, and the trial court agreed that his new sentence could be served concurrently with any penalty for parole violations. Nonetheless, after his sentencing, the petitioner filed motions to withdraw his guilty plea and for resentencing, and a motion for an evidentiary hearing on the question of ineffective assistance of trial counsel. The trial court held a hearing on those motions on September 10, 2004 and denied them. The trial court recited its recollection of the unrecorded sidebar conference, which did not differ substantially from the petitioner's recollection or the subsequent discussion on the record. The court found no coercion, determined that the petitioner's guilty [plea was voluntary, confirmed that the petitioner intended to withdraw a previously-filed motion to suppress a confession, and ruled that trial counsel performed adequately.

The petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, raising the following issues: (1) his guilty plea was coerced by the trial judge, (2) his trial counsel was ineffective, which rendered his guilty plea involuntary, (3) the presentence report was inaccurate, (4) the trial court failed to establish a factual basis sufficient to support his conviction, (5) his plea agreement was illusory, and (6) his sentence was based on facts that he neither admitted nor were determined by a jury beyond a reasonable doubt. The Michigan Court of Appeals denied his application for leave to appeal, and his subsequent application to the Michigan Supreme Court was denied as well. *People v. Moore*, No. 258252, slip op. at 1 (Mich. Ct. App. Dec. 17, 2004); *People v. Moore*, 473 Mich. 884, 699 N.W.2d 702 (2005).

On October 25, 2006, the petitioner filed his habeas petition raising the following issues:

I. Whether the trial court erred where it found petitioner's guilty plea was not induced by judicial coercion during an off the record discussion with the court, rendering his guilty plea involuntary.

> II. Whether the trial court erred where it found petitioner's guilty plea was not induced by the erroneous and misleading advice of counsel, depriving him of the effective assistance of counsel and making the plea involuntary.
>
> III. Whether petitioner is entitled to be resentenced where defense counsel failed to object to the inaccurate information in the presentence report in violation of his constitutional right to the effective assistance of counsel.
>
> IV. Whether the trial court failed to establish a factual basis sufficient to support petitioner's conviction for armed robbery as mandated by the court rules and due process of law.
>
> V. Whether petitioner's guilty plea to armed robbery was the product of an illusory plea bargain.
>
> VI. Whether petitioner is entitled to withdraw his guilty plea since the sentencing agreement was based on unconstitutional guidelines. The statutory sentencing guideline range in this case was based on facts which were not proven to a jury beyond a reasonable doubt or conceded to during the no contest plea in violation [of] *Blakely v. Washington*.

Pet. at iii.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Knowles v. Mirzayance*, __ U.S. __, __, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that it is not '"'an unreasonable application of clearly established Federal law'"' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first argues that his guilty plea was coerced by the trial judge during an off-the-record discussion, and therefore the guilty plea was involuntary. He says that the trial judge misled him when he described the potential penalty he was facing and how old he would be when he was released. He also complains that the trial judge should not have told him that he intended to deny his motion to suppress his confession.

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights, *see Boykin v. Alabama*, 395 U.S. 238, 243 (1969), and a court may accept a guilty or no-contest plea only where it is a 'voluntary[,] . . . knowing, intelligent act [ ] done with sufficient awareness of the relevant circumstances and likely consequences,' *see Brady v. United States*, 397 U.S. 742, 748 (1970)." *Fautenberry v. Mitchell*, 515 F.3d 614, 636-37 (6th Cir. 2008). A guilty plea must be

supported by "an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. at 242. The Sixth Circuit has stated that:

> [a] plea is valid if it is entered voluntarily and intelligently as determined under the totality of the circumstances. *Brady v. United States*, 397 U.S. 742, 749 (1970). The constitution requires the circumstances to reflect that the defendant was informed of all the direct consequences of his plea. *Id.* A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

*United States v. Ormsby*, 252 F.3d 844, 849 (6th Cir. 2001). The Supreme Court has held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady*, 397 U.S. at 748 (footnote omitted). Therefore, a guilty plea is voluntary if it is made with full knowledge of its direct consequences, and it will stand unless it is made under duress or as a result of threats, misrepresentations, or improper inducements. *Id.* at 755.

Proof that the guilty plea was voluntary and intelligently made generally is furnished through a transcript of state court proceedings. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Garcia*, 991 F.2d at 326-27. A satisfactory state-court transcript containing findings after a proper colloquy places upon the petitioner a "heavy burden" to overturn the state findings. *Id.* The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The guilty plea hearing transcript in this case satisfies all these requirements. The formal, on-the-record discussion between the petitioner and the court is a model of clarity and precision.

The petitioner was advised of all his constitutional rights, he agreed to waive them, and there was no doubt lingering about the sentence he would receive.

It is perhaps unfortunate that the sidebar discussion was not recorded. However, the petitioner's version of the conversation as recited in his brief provides no basis for concluding that he was coerced into pleading guilty. The trial court outlined the choices available to the petitioner at the time: go to trial and suffer no penalty if he wins, but face life in prison (although an unlikely sentence) if he loses; or plead guilty and receive a sentence of fifteen to thirty years in prison. The trial judge's recollection of the discussion was remarkably similar to the petitioner's:

> THE COURT: All right. As far as the side-bar conversation, which the defendant recalls perhaps something differently, I specifically indicated and asked the defendant whether that was what we discussed at side-bar because there was a request for a [*Cobbs*] between the prosecutor defense counsel, and I brought Mr. Moore up to the side-bar bench and asked him to participate as well so that he could knowingly do what he wished to do or reject the offer and proceed to trial . . . . Mr. Moore acknowledged that that's what was discussed in this particular matter. A [*Cobbs*] evaluation is permitted, there's no coercion there. I told Mr. Moore if he wanted to go to trial, he's more than welcome to do so, and asked him if he was doing so freely and voluntarily. All of this was under oath. He indicated he did. * * *

Mot. Hr'g Tr. at 10 (Sept. 10, 2004).

There was no attempt to persuade the petitioner to plead guilty. There were no unfulfilled promises of leniency. There were no threats of retaliation for exercising trial rights, pressure to plead guilty, or suggestions of mistreatment. The argument that the trial judge gave an advance ruling on the petitioner's suppression motion was not developed in the brief or supported by the record. But even if such a prediction occurred, it presumably was accurate and therefore not coercive. The petitioner says he was told that he would be eighty years old when he finished his sentence. It is unclear how that advice would have impacted his decision, however; the petitioner

-10-

was fifty-one years old when he pleaded guilty, and a fifteen-to-thirty-year sentence would yield those results if the petitioner served his maximum term. The evidence of the off-the-record discussion provides no basis to undermine the petitioner's "[s]olemn declarations in open court," *Blackledge*, 431 U.S. at 74, that he was pleading guilty freely and voluntarily. Habeas relief on this ground is not warranted.

B.

Next, the petitioner complains that he got bad advice from his lawyer and therefore his guilty plea was involuntary. At the hearing on the motion to withdraw the guilty plea, the trial judge rejected that claim, stating:

> So I find that there was -- and by the way, as far as the effective assistance of counsel, there was a substantial reduction in the original charges in this particular matter, a dismissal of a couple of more serious charges and a negotiation of a plea bargain agreement which was favorable to the defense in this particular matter in light of what could have occurred had he proceeded to try this case and been convicted. That and, more importantly, under oath I indicated to Mr. Moore that he understood -- I asked him whether he understood that this is a final resolution of this case and that there would be no withdrawal of his plea at any subsequent point in time, and he indicated and acknowledged that he understood that.

Mot. Hr'g Tr. at 11-12 (Sept. 10, 2004).

The petitioner's argument is not well developed, but it appears that his main complaint with his lawyer focuses on advice that the petitioner would serve his upcoming sentence concurrently with any past sentence if he were returned to prison on a parole violation. He also says that he was improperly counseled to abandon his suppression motion. To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The

petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first component of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. The petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

Defense counsel has an obligation to provide accurate information about the consequences of a guilty plea. *Smith v. United States*, 348 F.3d 545, 552-53 (6th Cir. 2003). However, there is no information in the record that defense counsel failed to fulfill that obligation. The petitioner received the sentence he bargained for. There is no record evidence that he was ordered to serve his sentence consecutively with any other prison sentence. The Michigan Offender Tracking Information System entry for the petitioner states that his earliest release date is August 18, 2018 and his maximum release date is August 16, 2033. That corresponds exactly with his fifteen-to-thirty-year sentence imposed in this case on August 11, 2003.

The petitioner has provided no information to support the idea that his motion to suppress his confession would have succeeded. He merely argues that "there were several of these personal factors in this case that warranted the suppression of Petitioner's police statement." Br. in Support of Pet. at 11. He does not argue that *Miranda* warnings were not given, he does not state that he was under duress, he does not elaborate on the "personal factors" counsel should have explored at an

evidentiary hearing, and he gives no grounds to support the inference that his statement to the police was involuntary. There is no reason to believe that defense counsel should have pursued a suppression motion at the possible expense of jeopardizing the plea offer.

The petitioner has not established that his trial counsel performed deficiently. Nor has he even suggested that he would not have pleaded guilty if he did not receive that advice from his lawyer. Because the petitioner has failed to satisfy both the performance and prejudice elements of the *Strickland* test, he has not shown that he was deprived of his right to competent counsel under the Sixth Amendment.

C.

The petitioner complains that his attorney was ineffective at sentencing by failing to object to inaccurate information in the presentence report. He says that his lawyer failed to challenge the scoring of two prior parole violations and a former conviction, which might have impacted the applicable sentencing guideline range. In fact, it appears that defense counsel did not speak to those matters at the sentencing hearing. Defense counsel noted that she had nothing to say because there was a sentencing agreement.

It is certainly possible that the omission of the prior convictions from the guideline calculus would have resulted in a lower sentencing range than 171-285 months. However, the petitioner has furnished nothing to suggest that the top end of the range would have been reduced below fifteen years. The sentencing guidelines in Michigan prescribe the range for the minimum sentence. *See* Mich. Comp. Laws § 769.34; *Cf. Phipps v. Romanowski*, 566 F. Supp. 2d 638, 646 (E.D. Mich. 2008). So any change in the prior record scoring would have had to effectuate a reduction from 285 months to 180 months before the petitioner would see any effect on his sentence. Even if defense

counsel's muteness at sentencing amounted to deficient performance, no prejudice has been shown. Moreover, the petitioner agreed at the guilty plea hearing to a sentence of fifteen to thirty years, and that is exactly what he received.

D.

The petitioner's next issue is that the failure of the trial judge to establish a factual basis for the guilty plea to armed robbery violated his due process rights. This argument fails on several levels. First, there is no federal constitutional right to a record that contains an admission of facts by a habeas petitioner to all the elements of the offense of conviction. The Supreme Court has made clear that, as a matter of federal constitutional law, a factual basis for a guilty plea need not be established for a state court to accept it. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime"). As the Supreme Court explained in *Alford*, although the federal courts are required by Rule 11 of the Federal Rules of Criminal Procedure to establish a factual basis for any guilty plea, the Constitution imposes no such requirement upon the States. *Id.* at 38 n.11; *see also Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975) (holding that "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea"); *United States v. McGlockin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (stating that the failure of a state trial judge to conduct an on-the-record inquiry into the factual basis for a plea is not a basis for habeas relief), *overruled on other grounds by Custis v. United States*, 511 U.S. 485 (1994).

Second, although the Michigan Court Rules require the trial court to elicit a factual basis for a guilty plea, *see* Mich. Ct. Rule 6.302(D)(1), a violation of state court rules will not support the

issuance of a writ of habeas corpus. It is well-established that "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). The Sixth Circuit has held that "[i]n a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981). No error of a constitutional dimension has been alleged here and the petitioner's claim that the trial court failed to establish a sufficient factual basis to support his guilty plea does not provide a basis for federal habeas relief.

Third, the trial court *did* elicit a factual basis for the guilty plea. The offense of conviction was armed robbery, which requires evidence of a larceny, an assault, and the use of a weapon. *See* Mich. Comp. Laws § 750.529; *People v. Johnson*, 206 Mich. App. 122, 125-126, 520 N.W.2d 672, 673 (1994) (stating that the elements of armed robbery are "(1) an assault, (2) a felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute"). At the guilty plea hearing, the petitioner admitted that on April 24, 2003 he wielded a knife at Katherine Bachelor, stabbed her, and took her purse, which he did not intend to return. There is no merit to the argument that the record is anemic as to a factual basis for the guilty plea.

E.

The petitioner also argues that his guilty plea was involuntary because it was the product of an illusory plea bargain. Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea, and wherein the defendant does not actually receive any benefit from such a plea, have been found to constitute coercion justifying the withdrawal of a guilty plea. *Spearman v. United States*, 860 F. Supp. 1234, 1250 (E.D. Mich. 1994). In this case,

however, the petitioner received a substantial benefit by pleading guilty to armed robbery. The sentence agreement capped a potential life sentence at thirty years. The prosecutor agreed to dismiss the habitual offender charge and the assault charges. The plea agreement was not illusory because the petitioner was promised the dismissal of the charges, which amounted to a real, tangible benefit in consideration for the plea. *See Daniels v. Overton*, 845 F.Supp. 1170, 1174-75 (E.D. Mich. 1994). In addition, the petitioner cannot show that his sentencing agreement was illusory. *See Doyle v. Scutt*, 347 F. Supp. 2d 474, 483 (E.D. Mich. 2004). Because the petitioner derived a real benefit from his plea and sentence bargain in this case, his plea was not illusory. Therefore, he is not entitled to habeas relief on this claim.

F.

Finally, the petitioner contends that he was sentenced on the basis of inaccurate information, and the trial court relied on facts that he did not admit and that were not proved beyond a reasonable doubt. The petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)). There is no indication that such a thing occurred in this case. Perhaps there was a mis-scoring of the state sentencing guidelines because of the manner in which prior convictions were counted. However, the petitioner has not alleged that the prior parole violations and convictions did not occur or that he was not responsible for them. The essence of his argument, therefore, is that the trial court mis-scored the Michigan sentencing guidelines. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining

the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

The petitioner also contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors to score the guidelines, which had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by the petitioner. The petitioner believes that *Blakely v. Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), support his position. However, the claim that Michigan's sentencing guideline system, where judge-found facts are used to establish the minimum sentence of an indeterminate sentence, violates the Sixth Amendment has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[The petitioner] argues that the Michigan trial judge violated *Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."). This Court is bound by that decision. Because the petitioner's sentence fell within the statutorily-authorized maximum penalty, which was not enhanced by judicial factfinding, no Sixth Amendment violation occurred. Moreover, the sentence the petitioner received was the product of an agreement he accepted before he pleaded guilty.

### III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 31, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO